UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EDOUARD SALOMON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 22-cv-10181-ADB |
| | * | |
| MASSACHUSETTS HOUSING FINANCE AGENCY, | * | |
| | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.,

Pro se Plaintiff Edouard Salomon ("Salomon" or "Plaintiff") brings this complaint, [ECF No. 38 ("Complaint" or "Compl.")], against his employer, Massachusetts Housing Finance Agency ("MassHousing" or "Defendant"), alleging retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a). Currently before the Court is Defendant's motion for summary judgment, [ECF No. 69], which, for the reasons set forth below, is **GRANTED**.

I.    **BACKGROUND**

A.    **Local Rule 56.1**

Local Rule 56.1 provides that "[a] party opposing [a] motion [for summary judgment] shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documents." L.R. 56.1. Local Rule 56.1 also states that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the

motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties."  L.R. 56.1.

Nevertheless, "'[d]istrict courts enjoy broad latitude' in adopting and administering such local rules."  NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 6 (1st Cir. 2002) (quoting Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994); see also Ramsdell v. Bowles, 64 F.3d 5, 7 (1st Cir. 1995) (noting district court's "great leeway in the application and enforcement of its local rules").  As such, "[w]here a party opposing a motion for summary judgment fails to comply with Local Rule 56.1, the court has the discretion to decide whether to impose the sanction of deeming the moving party's factual assertions to be admitted."  Butters v. Wells Fargo Advisors, LLC, No. 10-cv-10072, 2012 WL 5959986, at *2 (D. Mass. Nov. 27, 2012) (citing Swallow v. Fetzer Vineyards, 46 F. App'x 636, 638–39 (1st Cir. 2002)) (further citation omitted); Plourde v. Sorin Grp. USA, Inc., 517 F. Supp. 3d 76, 81 (D. Mass. 2021) (quoting Butters, 2012 WL 5959986, at *2) (same).

Additionally, courts "are solicitous of the obstacles that pro se litigants face, and while such litigants are not exempt from procedural rules, we hold pro se pleadings to less demanding standards than those drafted by lawyers and endeavor, within reasonable limits, to guard against the loss of pro se claims due to technical defects."  Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (citations omitted).  Nonetheless, "self-representation is not 'a license not to comply with relevant rules of procedural and substantive law.'"  Andrews v. Bechtel Power Corp., 780 F.2d 124, 140 (1st Cir. 1985) (citation omitted). "Thus, the Court will consider a pro se movant's circumstances when reviewing his motion for summary judgment but will not provide 'extra procedural swaddling.'"  Grossman v. Martin, 566 F. Supp. 3d 136, 143 (D.R.I. 2021) (quoting Eagle Eye Fishing Corp. v. U.S. Dep't of Com., 20 F.3d 503, 506 (1st Cir. 1994)).

Salomon did not comply with Local Rule 56.1.  He did not directly respond to Defendant's statement of undisputed facts, [ECF No. 71 ("SOF")], nor did he submit his own statement of facts; rather, he submitted a legal brief, which, in some circumstances, characterized certain facts without citation, and he attached four exhibits.  See generally [ECF No. 72]. Pursuant to the Court's discretion and in light of Salomon's pro se status, the Court will consider any factual disputes specifically raised by Salomon's brief, exhibits, and/or the summary judgment record.  If undisputed, the facts stated in Defendant's SOF are deemed admitted and stated below, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1.

### B.    Material Facts

MassHousing offers regular full-time employees, defined as those who work 35 hours per week, the full range of MassHousing benefits.  [SOF ¶ 5].  This includes advance tuition reimbursement payment of up to $2,500 per semester to help ease the financial burden of course enrollment.  [Id. ¶ 6].  To be eligible, the coursework must be (1) pertinent to the job responsibilities of the employee; and (2) part of an undergraduate degree, certificate program, or an advanced degree of a business-related nature.  [Id. ¶ 7].  For non-full-time employees, eligibility for tuition reimbursement benefits is limited to a pro-rated amount based on the MassHousing employee's workweek.  [Id. ¶ 8].  MassHousing employees also have access to a program called "LinkedIn Learning," a leading online education company which uses video-based self-paced training courses taught by industry experts.  [ECF No. 71-4 at 40]; [ECF No. 71-5 at 41].  They have access to this program by virtue of their connection to the MassHousing network.  [ECF No. 72-3 at 4].

Salomon was hired by MassHousing in May 2016 and worked as a customer service loan analyst in the Home Ownership Servicing and Operations division.  [SOF ¶ 1].  In February

2019, Salomon was placed on a performance improvement plan.  [Id. ¶ 2]. On September 5, 2019, Salomon went on leave from his position with MassHousing, and he has not returned to employment at MassHousing since beginning this leave.  [Id. ¶¶ 3–4].  In December 2019, Salomon filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") against MassHousing, alleging racial discrimination and retaliation.  [Compl. ¶ 13]; [ECF No. 72-1].

On May 12, 2020, Salomon received an email from Linda Donovan, a human resources professional at MassHousing, requesting that Salomon "[p]lease see the attached e-mail message regarding computer access (including LinkedIn Learning) and I.D. badge deactivation for employees out on leaves of 15 days or more."  [ECF No. 72-2 at 2].  The attached email stated that, effective February 1, 2020, MassHousing would "deactivate the building access badge of any employee on continuous leave for more than fifteen days."  [Id. at 3].

On July 24, 2020, Salomon emailed Donovan requesting copies of MassHousing's tuition reimbursement forms, seeking reimbursement for a Fall 2020 course entitled "Water Resources Policy and Watershed Management."  [ECF No. 71-10 at 4, 7].  Donovan sent the forms on July 28, 2020.  [Id. at 4].  On or around July 28, 2020 and August 4, 2020, Salomon had additional conversations with personnel from MassHousing, during which he was informed that MassHousing was instituting a new tuition policy, effective either the week of July 1, 2020 or August 3, 2020, which would be applicable to employees out on leave.  [ECF No. 71-10 at 2–3]; [SOF ¶ 14].  During an August 4, 2020 conversation between Salomon and MassHousing's then Payroll Coordinator Maria Caceres, Salomon was informed that despite the policy change, he would still receive advance tuition benefits for the Fall 2020 semester but would not receive those benefits for the Spring 2021 semester.  [SOF ¶ 15].

4

On or around August 18, 2020, MassHousing employees, including Salomon, received a copy of an updated employee handbook, accessible via an online link.  [ECF No. 71-6 at 2]; [SOF ¶ 11].  The email contained "a summary of this year's updates to the handbook," which included, as relevant here:

**Page 35 Education, Training, and Profess[i]onal Development:**

*"Employees who are on continuous leave for more than fifteen days are not eligible for advance tuition requests. Tuition assistance may be resumed once an employee's extended leave is completed."*

**Pages 51 Workplace Safety and Health:**

Added under Security Access Cards and Network Deactivation for Extended Leave

*"MassHousing will deactivate the building access badge of any employee on continuous leave for more than fifteen days. This practice will ensure employees with deactivated badges/computer access comply with needed 'return to work' documentation/procedures and only return to work once they are safely able to do so.  This practice will farther support MassHousing's commitment to a safe and secure workspace for all."*

[SOF ¶ 11]; [ECF No. 71-6 at 2–3].

Salomon received tuition benefits for the Spring and Fall semesters of 2020.  [SOF ¶ 16]. On January 7, 2021, Salomon submitted a request for advance tuition benefits for the Spring 2021 semester for a course entitled "Chocolate, Culture, and the Politics of Food."  [Id. ¶ 17]. He also requested reimbursement for a MacBook Pro that he had already purchased.  [Id. ¶ 18].[1]

---

[1] Laptops were not a covered expense under MassHousing's tuition reimbursement policy.  [Id. ¶ 19].

On January 21, 2021, MassHousing informed Salomon that his tuition advancement request for Spring 2021 and his reimbursement request for a laptop were not approved.  [Id. ¶ 20].

### C.    Procedural History

Plaintiff filed his original complaint in this action on February 3, 2022.  [ECF No. 1].  On July 7, 2022, the defendants named in the original complaint filed a motion to dismiss.  [ECF No. 12].  Plaintiff then filed an amended complaint dropping all defendants except MassHousing, [ECF No. 14], which effectively mooted the first motion to dismiss, see [ECF No. 17 (order denying as moot first motion to dismiss)].  MassHousing thereafter filed a second motion to dismiss on August 11, 2022, [ECF No. 15], and Plaintiff filed a response to that motion on March 1, 2023, [ECF No. 23].  On March 21, 2023, the Court granted MassHousing's motion to dismiss, and it gave Plaintiff an opportunity to file a motion for leave to amend his complaint again within 21 days, [ECF No. 24], which he filed on April 6, 2023, [ECF No. 25].

The Court allowed Plaintiff's motion for leave to amend, but only as to his proposed retaliation claim for filing an MCAD complaint, [ECF No. 28], and it ordered Plaintiff to file an amended complaint consistent with that order, [ECF No. 30].  Plaintiff filed a second amended complaint on February 7, 2024, [ECF No. 31], after which Defendant filed a motion for a more definite statement, [ECF No. 33], which this Court allowed, [ECF No. 36].  Plaintiff filed the operative third amended complaint on May 2, 2024.  [Compl.].

Following discovery, on March 11, 2025, Defendant filed its motion for summary judgment, [ECF No. 69], which Plaintiff opposed on March 17, 2025, [ECF No. 72].

## II.    LEGAL STANDARD

Summary judgment is appropriate where the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003). "A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. When reviewing the record, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Id. The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must" point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any trial-worthy question of material fact, "it is the burden of the nonmoving party to proffer facts

7

sufficient to rebut the movant's assertions." Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

## III.    DISCUSSION

To succeed on a claim for retaliation under Title VII, Plaintiff "must show that '(1) [he] engaged in protected activity; (2) [he] suffered some materially adverse action; and (3) the adverse action was causally linked to [his] protected activity.'" Stratton v. Bentley Univ., 113 F.4th 25, 41–42 (1st Cir. 2024) (quoting Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 81 (1st Cir. 2007)). Once Plaintiff establishes this prima facie case, "the burden swings to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision." Id. (quotations omitted). For purposes of this motion for summary judgment, Defendant concedes that Plaintiff participated in a protected activity by filing an MCAD complaint, [ECF No. 70 at 7], and Plaintiff similarly identifies that MCAD complaint as the relevant protected conduct, [ECF No. 72 at 2]. Defendant disputes, however, that Plaintiff suffered a materially adverse action and that any alleged materially adverse action was causally connected to Plaintiff's MCAD complaint. [ECF No. 70 at 7–14].

As to the materially adverse action prong, Plaintiff contends that he suffered three materially adverse actions: 1) "alterations to tuition reimbursement processes," 2) revoked "access to LinkedIn Learning resources," and 3) "revised access protocols for employees on leave." Defendant focuses its briefing on its revised tuition reimbursement policy, which it contends is not a materially adverse action because it did not "significantly alter the conditions of [Plaintiff's] employment for purposes of a retaliation claim," [ECF No. 70 at 7], "did not result in injury or harm" to Plaintiff, [id. at 10], and "did not involve a demotion, a reduction in pay or other pecuniary loss, [id. at 11]. Defendant additionally contends that "the policy change,

implemented by MassHousing on an agency-wide basis in conjunction with other employee handbook updates, simply paused eligibility for request for tuition reimbursement while an employee was on leave" and would not dissuade an objectively reasonable employee from engaging in protected activity.  [Id. at 11–12].

Much of Defendant's cited case law is inapposite, as it speaks to the definition of an adverse employment action under Title VII's substantive discrimination provision, not its retaliation provision, which the First Circuit recently reaffirmed are subject to different standards. [2]  Stratton, 113 F.4th at 41–44.  Specifically, the First Circuit emphasized that, unlike its substantive provision, adverse actions pursuant to Title VII's retaliation provision are "not limited to discriminatory actions that affect the terms and conditions of employment.'"  Id. at 42 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)).  Rather, the retaliation provision "covers all 'materially adverse' actions, including those not directly related to an employee's job."  Id.  The relevant inquiry is whether the alleged adverse action "would have dissuaded a reasonable employee from making a complaint of discrimination."  Id. at 44.  "Each case must be decided on its own facts," and, in answering the question, the Court must keep in mind that the alleged "retaliation need not have 'a dramatic impact' on a plaintiff's job."  Id.  That said, not all harms are actionable under Title VII's retaliation provision, which "speak[s] of material adversity," differentiating "significant from trivial harms."  Burlington, 548 U.S. at 68.

---

[2] See, e.g., [ECF No. 70 at 8–9 (citing Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (discussing adverse employment action in relation to substantive provision of Title VII); Cham v. Station Operators, Inc., 685 F.3d 87, 94 (1st Cir. 2012) (same); Desai v. Univ. of Massachusetts Mem'l Med. Ctr., 605 F. Supp. 3d 255, 267 (D. Mass. 2022) (same); Nwachukwu v. Vinfen Corp., No. 16-cv-11815, 2019 WL 5698461, at *9 (D. Mass. Nov. 4, 2019) (same))].

Although Defendant does not address it, the Court first turns to Plaintiff's contention that Defendant's policy change revoking network and building access to employees on leave for more than fifteen days constitutes a materially adverse action. Even drawing all inferences in Plaintiff's favor, it is difficult to envision how these policies would dissuade a reasonable employee from filing a discrimination complaint, given that an employee going out on leave has little need for network or building access. [ECF No. 72-3 at 5 (Defendant admitting in response to MCAD investigatory request that "employees are not expected or permitted to perform work while on disability leave")]. The Court understands that Plaintiff was likely disappointed that, while on leave, he could not access MassHousing's network (and, as a consequence, LinkedIn Learning) and facilities; that said, the Court cannot conclude on the present record that this disappointment rises to the level of a material harm, rather than a trivial one, such that it is actionable retaliation pursuant to Title VII.

The policy change denying tuition reimbursement to employees out on leave poses a closer call. As this Court noted in its order on Plaintiff's motion for leave to amend, federal courts are divided on whether denying an employee tuition benefits constitutes a materially adverse action under Title VII's retaliation provision. [ECF No. 28 at 12–13 (collecting cases)]. Defendant urges the Court to find that Plaintiff did not suffer a materially adverse action because he was ultimately paid for the 2020 academic year and only denied payment "for a course that does not facially appear to be pertinent to [his] job responsibilities." [ECF No. 70 at 10]. Although this argument has some intuitive appeal on first blush, it ultimately misconstrues Plaintiff's allegation. Plaintiff does not contend that the Spring 2021 tuition reimbursement denial constituted a materially adverse action; rather, he asserts that the materially adverse action was the policy change prohibiting him from accessing any tuition reimbursement benefits while

10

on leave, both in Spring 2021 and in the future.  In other words, the material harm he is alleging

is not the inability to take "Chocolate, Culture, and the Politics of Food" in the Spring of 2021

but rather MassHousing's refusal to consider any future reimbursement requests from him if he

remained on leave.

On this front, the Court is mindful that retaliatory acts which "contribute[] significantly to

[an] employee's [ability to obtain] professional advancement might well deter a reasonable

employee from complaining about discrimination."  Burlington, 548 U.S. at 69; c.f. Bronson v.

Town of S. Kingstown ex rel. Saul, 766 F. Supp. 3d 336, 346 (D.R.I. 2025) (holding plaintiff had

not proffered sufficient evidence to demonstrate that denial of single training request rose above

a "trivial harm" and stating that "[w]hat could have established the denial's materiality would be

evidence suggesting that the Use of Force training would have contributed 'significantly to

[plaintiff's] professional advancement' such that the denial of such training 'might well deter a

reasonable employee from complaining about discrimination'") (quoting Burlington, 548 U.S. at

69)).  The limited summary judgment record gives the Court pause in taking a definitive stance

on the issue.  On the one hand, the summary judgment record does reflect that Plaintiff spent the

years that he was on leave taking courses and that those courses were relevant enough to his

career advancement that MassHousing did, in fact, reimburse him for the tuition pursuant to its

policy.  [SOF ¶ 16].  On the other hand, there is nothing in the record to suggest that taking these

courses meaningfully advanced or was aimed at advancing Plaintiff's career in any way.  For

instance, Plaintiff does not tie his courses to any specific requirement of his job (or any other job

he might have aspired to obtain at MassHousing) that was being advanced by the courses he was

taking, nor is the career relevance necessarily evident from the titles of the courses.  In essence,

while the tuition reimbursement was certainly a benefit, Plaintiff has created at best a tenuous

dispute of material fact as to whether revoking that benefit caused him any material, tangible harm.

Ultimately, however, the Court need not reach a conclusion as to whether the tuition reimbursement policy change constitutes a material adverse action because the summary judgment record contains few, if any, facts from which the Court could conclude that Plaintiff's MCAD complaint was the but-for cause of the policy change, as required under Title VII. Stratton, 113 F.4th at 44. "Unlike a substantive discrimination claim, a retaliation claim cannot rest on evidence that a plaintiff's protected activity was merely one of the employer's motivations for an adverse action." Id. Rather, Plaintiff must show that MassHousing "would not have taken the adverse action but for a desire to retaliate." Id. "[A]n inference of causation may be appropriate where there is close temporal proximity between protected activity and an adverse action," provided, however, that the record also contains "proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action." Id. at 45 (quoting Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006)). "Such a standard protects against a poor-performing employee shielding themselves from termination by the mere fact that they engaged in protected conduct." Id. at 44.

As he did at the motion to dismiss stage, Plaintiff contends that the temporal proximity between his MCAD complaint and the tuition reimbursement policy change support an inference of retaliation. [ECF No. 72 at 2, 5]. In so doing, he asserts, as he did in his Complaint and at the motion to dismiss stage, that the tuition reimbursement policy went into effect on February 1, 2020, or a mere two months after he filed his MCAD complaint. [Id.]. In support of this effective date, however, Plaintiff offers only the email he received from Linda Donovan on May 12, 2020, notifying him that, effective February 1, 2020, he would lose access to the building and

to his computer.  [ECF Nos. 72-2, 72-4].  That email says nothing regarding the tuition reimbursement policy, which Defendant contends took effect around the time they circulated the updated employee handbook in August 2020.  [ECF No. 70 at 13]; [ECF No. 71-6 (August 2020 email circulating handbook to Plaintiff and describing tuition reimbursement policy as one of the "updates" to the handbook)]; [ECF No. 71-7 (same for other employees)].

Plaintiff's unsupported, conclusory assertion that the tuition reimbursement policy took effect in February 2020 is insufficient to create a genuine dispute of material fact, particularly where the summary judgment record otherwise supports Defendant's contention that the tuition reimbursement policy change went into effect on or around the time it circulated the updated employee handbook in August 2020.  Although the email to employees regarding the updated handbook does not include an effective date for the changes, Plaintiff's own emails indicate that he was informed of the tuition reimbursement policy for the first time in late July 2020 and understood it to be taking effect around that time.  [ECF No. 71-9 (July 29, 2020 from Plaintiff to Defendant's payroll coordination stating, "per our telephone conversation yesterday, you informed me that there was a policy change effective July 1, 2020" and that "this new policy . . . prohibits MassHousing employee's that are out on medical leave from taking advantage of the" tuition reimbursement policy)]; see also [ECF No. 71-12 at 2 (January 12, 2021 email from Defendant to Plaintiff, reminding Plaintiff that he was "informed that effective last summer" the tuition reimbursement policy change took effect)].  Moreover, any inference that the policy took effect earlier than summer 2020 is undercut by the fact that Plaintiff admits to having received tuition reimbursement for the Fall 2020 semester, seemingly without incident, as well as for the Spring 2020 semester, despite the effective date falling within that semester.  [ECF No. 71-3 ¶ 7 (Plaintiff admissions that he received tuition reimbursements for Fall and Spring 2020)].  This

approximately eight-month gap between Plaintiff's MCAD complaint and the policy (and the even longer period between the complaint and his loss of tuition benefits) is insufficient to raise an inference of retaliation.[3]  Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 25 (1st Cir. 2004) ("Three and four month periods have been held insufficient to establish a causal connection based on temporal proximity.").

Because Plaintiff has failed to show that his protected activity was the but-for cause of any materially adverse action, his retaliation claim fails, and Defendant's motion for summary judgment is **GRANTED**.

IV.    **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment, [ECF No. 69], is **GRANTED**.

**SO ORDERED.**

June 5, 2025                                    /s/ Allison D. Burroughs
                                               ALLISON D. BURROUGHS
                                               U.S. DISTRICT JUDGE

---

[3] Plaintiff also briefly contends that he is entitled to an inference of causation because of the "targeted application of the policy," as he was "the only employee on leave exceeding 15 days" at the time of the change.  [ECF No. 72 at 5].  The record reflects that Plaintiff was not the only employee on extended leave at the time of the policy change, [ECF No. 71-7 at 2 (listing two employees out on extended leave in August 2020)], but he was the only employee out on leave utilizing the tuition reimbursement program, [ECF No. 72-3 at 5].  Although the Court is sympathetic to Plaintiff's argument regarding the policy's limited application, the Court cannot conclude on the present record that Plaintiff's MCAD complaint, in particular, was the but-for cause of the policy change, as it is devoid of any facts connecting that MCAD complaint to the update.  Alvarado v. Donahoe, 687 F.3d 453, 459 (1st Cir. 2012) ("[O]ur cases have in the past explained that, to successfully establish a claim of unlawful retaliation there must be, at a minimum, . . . competent evidence that the alleged retaliators knew of the plaintiff's protected activity and that a retaliatory motive played a part in the adverse employment actions alleged . . . ." (internal quotations omitted)).